IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEAN P. KELNER,

    Plaintiff,

   v.         CASE NO. 10-3127-SAC

ED HARVIN,
et al.,

    Defendants.

**MEMORANDUM AND ORDER**

  Upon screening the complaint in this action, the court entered an Order requiring that plaintiff submit a fully completed motion and affidavit for leave to proceed in forma pauperis (IFP) and to show cause why this action should not be dismissed for failure to state a claim. Plaintiff has filed a second motion to proceed IFP and a Response. Having carefully considered plaintiff's Response together with all materials filed, the court finds as follows.

  The court required plaintiff to submit a "fully completed (IFP) motion and affidavit" setting forth all his assets. While the second motion filed by plaintiff in response states that he has cash assets, he does not provide the amount of those assets on the form as required. The court finds that plaintiff has failed to satisfy the filing fee prerequisites in this case and has failed to comply with the court's order to provide complete financial information to support his motion to proceed IFP.

In its screening Order, the court found that the only material facts alleged in the complaint by Mr. Kelner were that he spent 190 days in the Ellis County Jail in 2009 for trial under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. § 59-29a01 et seq.; was housed in general population under the same conditions as criminal inmates; was not able to seek release on bond, and was not afforded the same treatment as already-committed Sexually Violent Predators (SVPs). In his Response, plaintiff does not allege a single additional fact to support his claims of a federal constitutional violation, despite the court's discussion of the many facts he failed to allege to state such a claim. Instead, he simply disagrees with the court's holding that his being housed in a jail pending hearing under the KSVPA, standing alone, is insufficient to state a federal constitutional violation.

In plaintiff's Response, he again argues that the "law is clearly established that the constitutional rights of a person who is civilly committed, or is being tried for civil commitment, are violated if they are placed in any jail or penal facility." In support of this argument, he mainly relies upon Lynch v. Baxley, 744 F.2d 1452, 1458-59 (11th Cir. 1984), a 1984 opinion from another Circuit that this court is not bound to follow. Moreover, the circumstances in Lynch are not entirely analogous to those of Mr. Kelner. Lynch involved the "emergency detention of those who threaten immediate and serious violence to themselves or others" in

the Alabama county jails.[1]  That court was concerned with "ensuring the least restrictive means of holding people pending commitment proceedings" that were not sexually violent predator proceedings. The Alabama law pursuant to which the involuntary commitment proceedings and emergency detentions in Lynch had been ordered was not the same law as the KSVPA.  In sum, Lynch neither requires nor convinces this court to hold that the detention in a county jail of a person in Kansas awaiting trial as an SVP is a per se violation of the U.S. Constitution.

In his complaint, Mr. Kelner argued that his detention violated the KSVPA.  He acknowledges in his Response that the KSVPA actually allows for a person being tried thereunder to be held in a county jail.  See K.S.A. § 59-29a05(d).  He now argues in his Response that this provision of the KSVPA violates Lynch.  The court reiterates that this allowance in the KSVPA does not violate Lynch, which is distinguishable, and that even if it did, Lynch is not binding upon this court.

The other federal case cited by plaintiff, in support of his position is Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004).  Even if the decision in Blanas is properly interpreted by plaintiff, that court's decision was based upon provisions in the California Penal Code that are not the same as the pertinent provisions in the

---

[1] Lynch involved the "emergency detention provision of the Alabama civil commitment statute, § 22-52-7," which provided that no person would be placed in jail under the act unless the person posed an immediate threat to himself or others and no other facility was available to safely detain the person. Id. at 1457.  It also involved "desperate" jail conditions that were worse than the state prisons and mental institutions.

3

KSVPA. In any event, decisions of the Ninth Circuit Court of Appeals are not binding upon this court.

This court finds more persuasive the reasoning and holdings in cases like <u>Atwood v. Vilsack</u>, 338 F.Supp.2d 985, 997-98 (S.D. Iowa 2004), based upon an SVP Act that is essentially the same as the one in Kansas. In <u>Atwood</u>, the court held that the detention of a pretrial detainee in a county jail to await civil commitment proceedings pursuant to the SVPA and the denial of bail[2] to that detainee, standing alone, did not evince a violation of due process or other federal constitutional rights. <u>Id.</u>; <u>see</u> <u>also</u> <u>Merryfield v. Kansas</u>, 2009 WL 3125470 (D.Kan. Sept. 25, 2009)(unpublished, cited for reasoning).

---

[2] The Eighth Amendment does not grant an absolute right to bail. Moreover, as the court in <u>Atwood</u> reasoned, the denial of bail in circumstances evidencing mental abnormalities and dangerousness has been "routinely upheld." <u>See</u> <u>id.</u>, (citing cases including <u>e.g.</u>, <u>Kansas v. Hendricks</u>, 521 U.S. 346, 352 (1997)(permitting civil detention of people with "mental abnormality" that rendered them likely to commit "predatory acts of sexual violence"); <u>Vitek v. Jones</u>, 445 U.S. 480 (1980)(requiring mental illness and dangerousness as conditions for nonrelease)). On the other hand, it is well-established that due process requires the "nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." <u>Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972). Due process was satisfied in plaintiff's case because the determination of mental abnormality and dangerousness was made at the outset of his detention. Pretrial detention of an SVP in Kansas is premised upon a judge's probable cause finding that the individual is a sexually violent predator, meaning he suffers from a mental abnormality making it likely that he will engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility. This determination, "in turn, is reasonably related to denying bail to the plaintiff pending a full-blown hearing." <u>See</u> <u>Atwood</u>, 338 F.Supp.2d at 998. The KSVPA provides the detainee an opportunity to present evidence at the probable cause hearing that he is not dangerous or does not suffer from a mental abnormality. <u>See</u> <u>id.</u> (citing <u>Hendricks</u>, 521 U.S. at 357 (civil commitment approved where detainee was given opportunity to challenge the commitment and the "confinement takes place pursuant to proper procedures and evidentiary standards")). "Essentially the case law requires that there must be an individual determination, whether called a bail hearing or not, before someone is locked away." <u>Id.</u> Such opportunity is provided under the Kansas statute, and from a federal perspective, appears to comport with due process. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Atwood v. Vilsack</u>, 725 N.W.2d 641 (Iowa 2006)(Neither Iowa state law nor common law provides entitlement to bail while awaiting civil SVP proceedings.).

Plaintiff appears to additionally argue that <u>Lynch</u> establishes that the KSVPA is unconstitutional. The constitutionality of the KSVPA has been upheld against due process and equal protection challenges by the Kansas Supreme Court. <u>In re Care & Treatment of Hay</u>, 263 Kan. 822, 832-34, 953 P.2d 666 (1998); <u>Van Camp v. State</u>, 240 P.3d 627, *1 (Kan.App. Oct. 22, 2010, unpublished)(cited for reasoning). The KSVPA was also thoroughly examined and upheld as constitutional by the United States Supreme Court. <u>Hendricks</u>, 521 U.S. at 346; <u>see</u> <u>also</u> <u>Kansas v. Crane</u>, 534 U.S. 407, 409-10 (1997). The KSVPA, as examined by the U.S. Supreme Court, provided for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. <u>Hendricks</u>, 521 U.S. at 363-64. The Supreme Court was aware that at the time the SVPs in Kansas were held in a segregated unit within the state prison system. More recently, the U.S. Supreme Court upheld a federal statute, under the Necessary and Proper Clause, that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released. <u>United States v. Comstock</u>, ___U.S.___, 130 S.Ct. 1949 (May 17, 2010). The "civilly committed" person remained confined at a federal prison, and the Court did not address that the prison as his place of confinement was unconstitutional. Plaintiff complains of the legality of his detention under state authority; however, he has failed to demonstrate that this detention was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the

5

United States." See Williams v. Taylor, 529 U.S. 362, 404 (2000); see also Allen v. Illinois, 478 U.S. 364, 373 (1986)(the fact that sexually dangerous persons are housed with prisoners in need of psychiatric treatment in a maximum-security facility does not transform the State's intent to treat into an intent to punish). Plaintiff has not presented, and this court has not discovered, any U.S. Supreme Court opinion or controlling Tenth Circuit opinion holding that a person in Kansas for whom probable cause has been found to be tried as a SVP cannot be held in a county jail during trial under the KSVPA.

Plaintiff also claims in his Response that it is clearly established that an SVP in Kansas is entitled to the same protections as all civil committees in Kansas. In fact, the law is to the contrary. See Burch v. Jordan, 2010 WL 5391569 (D.Kan. Dec. 22, 2010)(unpublished, cited for reasoning)(Persons committed under the KSVPA are different from persons such as the plaintiff in Youngberg[3] who was civilly committed because of mental infirmities and not based on an adjudication of sexually violent behavior that posed a danger to others. In that sense, the rights of persons such as plaintiff, a KSVP, cannot be coextensive with civil committees like the plaintiff in Youngberg.). In Van Camp, the Kansas Court of Appeals thoroughly considered the argument of an SVP that he was similarly situated to all other civilly committed patients based upon the wording in the separate and distinct

---

[3] Youngberg v. Romeo, 457 U.S. 307 (1982).

6

statutes applicable to Mentally Ill Persons, and for Persons with an Alcohol or Substance Abuse Problem. That court found:

> The Kansas Supreme Court has decided against Van Camp's argument when it stated that "there exist clear distinctions between this class [sexually violent predators] and other classes which are not similarly treated." Hay, 263 Kan. at 833. The United States Supreme Court also noted that the Act was designed to deal with a different class of offenders. "Although Kansas already had a statute addressing the involuntary commitment of those defined as 'mentally ill,' the legislature determined that existing civil commitment procedures were inadequate to confront the risks presented by 'sexually violent predators.'" Kansas v. Hendricks, 521 U.S. 346, 350-51, 138 L.Ed.2d 501, 117 S.Ct. 2072 (1997).
>
> Further, the Act itself notes the differences between the classes of involuntarily committed patients. See K.SA. 59-29a01. If Van Camp were in the same class as all other civilly committed patients in Kansas, it would not have been necessary for the legislature to create a different act to deal with sexually violent predators and explicitly state that they are subject to a "separate involuntary civil commitment process." K.S.A. 59-29a01.
>
> Further, the statutory definitions of the different classes of civilly committed patients show that Van Camp's status is distinguishable from other patients in Kansas. A sexually violent predator is "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2009 Supp. 59-29a02(a). In contrast, a mentally ill person under the Care and Treatment Act for Mentally Ill Persons is
>
>> "any person who is suffering from a mental disorder which is manifested by a clinically significant behavioral or psychological syndrome or pattern and associated with either a painful symptom or an impairment in one or more important areas of functioning, and

> involving substantial behavioral,
> psychological or biological dysfunction,
> to the extent that the person is in need
> of treatment." K.S.A. 59-2946(e).
>
> The Care and Treatment Act for Persons with an
> Alcohol or Substance Abuse Problem deals with a
> person who "(1) Lacks self-control as to the use
> of alcoholic beverages or any substance as defined
> in subsection (k); or (2) uses alcoholic beverages
> or any substance as defined in subsection (k) to
> the extent that the person's health may be
> substantially impaired or endangered without
> treatment." K.S.A. 59-29b46(f). The very
> definition of sexually violent predator shows that
> Van Camp is in a different class from mentally ill
> persons or persons with substance or alcohol abuse
> issues. See Hay, 263 Kan. at 833.
>
> Finally, Van Camp ignores a key distinction
> between himself and those committed under the Care
> and Treatment Act for Mentally Ill Persons. Those
> committed under that Act have not necessarily been
> convicted of a crime. See K.S.A. 59-2946(f). . .
> . As a sexually violent predator, however, Van
> Camp has been found guilty of a sexually violent
> crime. See K.S.A.2009 Supp. 59-29a02(a).
>
> Based on the differences between sexually violent
> predators and other civilly committed patients in
> Kansas, Van Camp has not met his burden of proving
> dissimilar treatment for similarly situated
> people. See Salas, 289 at 250-51. Therefore,
> equal protection rights are not implicated. See
> Hodges, 288 Kan. at 72.

Van Camp, 240 P.3d 627, at *3-*4. Plaintiff has not shown that he is similarly situated with persons civilly committed under laws other than the KSVPA. Mr. Kelner is neither a person who was found not guilty by reason of insanity nor one whose commitment proceedings bore no relation to his guilt of criminal offenses. He is not the same as a person civilly committed solely due to mental infirmities and not based on an adjudication of sexually violent behavior that posed a danger to others. Instead, plaintiff is a

8

person who was convicted of a predicate sexually violent offense in the past and who currently meets the definition of an SVP including that he presents a high likelihood of committing sexually violent acts if released. There are institutional and societal interests at stake in the protection of society from the dangerous and violent behavior of persons who are committed as sexually violent predators. As noted, it follows that the rights of persons such as plaintiff are "not coextensive with those of civil committees like the plaintiff in Youngberg." Furthermore, the KSVPA does not treat similarly situated individuals dissimilarly; all members of the class of persons who are found to be sexually violent predators with mental abnormality or personality disorder likely to engage in predatory acts of sexual violence are subject to identical treatment, "and there exist clear distinctions between this class and other classes which are not similarly treated." Matter of Hay, 263 Kan. at 833.

Plaintiff cites other Kansas statutes, that are not part of the KSVPA, and argues that these state laws were violated by his placement in the county jail. As plaintiff was informed in the court's prior order, whether his confinement in the Ellis County Jail violated state law is a question for the state courts and presents no cognizable claim under § 1983. Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Plaintiff's claim that he was denied bail is also based upon state law, and likewise fails to state a claim under § 1983.

9

There are additional reasons to dismiss this action. Defendant Assistant Kansas Attorney General Bauch is entitled to absolute prosecutorial immunity for alleged acts that were done as an advocate during the presentation of a civil commitment case in state court. See Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993); Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Likewise, defendant Judge Toepfer has absolute judicial immunity for any order made in a judicial proceeding over which he presided. See 28 U.S.C. § 1915(e)(2)(B)(providing for dismissal if pro se plaintiff proceeding in forma pauperis seeks monetary relief against a defendant who is immune from such relief). The only defendant named by plaintiff who is not absolutely immune to suit for money damages is Sheriff Harvin. While defendant Harvin may have been plaintiff's custodian during his detention at the Ellis County Jail, plaintiff alleges no facts indicating that Sheriff Harvin directly participated in the decision to place plaintiff at the jail pending his civil proceedings.

It remains quite clear that the essence of plaintiff's complaint is nothing more than a challenge to the fact of his detention in a jail facility prior to and during his civil SVP proceedings. The legality of this "pre-trial detention" could have properly been tested by Mr. Kelner by way of a § 2241 petition.[4]

---

[4] The court perceives that 190 days might not have been sufficient time for plaintiff to adjudicate his claim in state proceedings and then in federal court under § 2241. Had he managed to properly file a state habeas action and then a § 2241 petition while he was actually detained at the county jail, the state courts or this court might have retained jurisdiction under certain circumstances. See e.g., Schall v. Martin, 467 U.S. 253, 280 (1984)(New York courts have adopted a liberal view of the doctrine of "capable of repetition, yet

10

See Walck v. Edmondson, 472 F.3d 1227, 1235 (10th Cir. 2007); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000). Immediate or speedier release from state custody thought to be illegal must be sought by way of a petition for writ of habeas corpus. Preiser v. Rodriquez, 411 U.S. 475, 484 (1973). Mr. Kelner is no longer in pretrial custody at the jail. He failed to initiate a timely habeas corpus challenge to the legality of his pretrial custody while he was still "in custody."[5] The opportunity for him to challenge the legality of that custody by proper means may therefore be moot. See e.g., McAlpine v. Thompson, 187 F.3d 1213, 1216 (10th Cir. 1999). Likewise, his challenge to the legality of that detention without an opportunity for bond is moot. See Ferry v. Gonzales, 457 F.3d 1117, 1132 (10th Cir. 2006).

Nevertheless, plaintiff seeks damages for this 190-day period of allegedly illegal detention. Because plaintiff's claims for damages and declaratory relief would necessarily imply the invalidity of his detention in the Ellis County Jail, they are barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Cohen v. Clemens, 321 Fed.Appx. 739, 741 (10th Cir. 2009)(unpublished, cited as persuasive authority). The Tenth Circuit in Cohen reasoned as follows:

---

evading review: precisely in order to ensure that pretrial detention orders are not unreviewable.). On the other hand, claims for injunctive relief actually concerning conditions at the jail, including being held without bail, are rendered moot by the detainee's removal from those conditions. Money damages are not properly sought in a habeas corpus petition.

[5] Section 2241(c)(1) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless [he] is in custody." See Riley v. I.N.S., 310 F.3d 1253, 1257 (10th Cir. 2002).

> In Heck, the Supreme Court held that no cause of action exists under 42 U.S.C. § 1983 for actions that, if proven, would "necessarily imply" the invalidity of an underlying conviction or sentence, unless that conviction or sentence is first properly invalidated, either on appeal or through habeas corpus proceedings. Heck, 512 U.S. at 487, 114 S.Ct. 2364. . . .
>
> . . . [T]he rule in Heck is not limited to claims challenging the validity of criminal convictions. See Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)(applying Heck to a § 1983 claim challenging procedures used to deprive a prison inmate of good time credits); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1137 (9th Cir. 2005)(applying Heck to a § 1983 claim challenging civil commitment under California's Sexually Violent Predators Act); Hamilton v. Lyons, 74 F.3d 99, 102-03 (5th Cir. 1996)(applying Heck to a § 1983 claim challenging the coercive nature of a pretrial detainee's confinement prior to giving a statement regarding pending charges). Because Cohen would need to prove that his detention was unlawful in order to receive an award of damages for that detention, the district court correctly concluded that Heck applied to bar Cohen's Bivens action.

Id. Plaintiff has presented no evidence that any court has invalidated his pretrial detention in the county jail. Heck, 512 U.S. at 486-87. It follows that plaintiff's claim for money damages based upon allegations that his pretrial detention was unconstitutional is barred by Heck.

In addition, a person in confinement pursuant to the judgment of a state court is required to fully exhaust state court remedies prior to filing a habeas corpus action in federal court challenging that confinement. See 28 U.S.C. § 2254(b)(1)(A). This exhaustion doctrine applies to habeas petitions brought under § 2241 as well as § 2254. Montez, 208 F.3d at 866 ("A habeas

petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254.")(citing Coleman v. Thompson, 501 U.S. 722, 731 (1991)); see also Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986). It does not appear that plaintiff satisfied the exhaustion prerequisite prior to seeking relief in federal court. No justification is presented for permitting Mr. Kelner to so easily circumvent the established "in custody" and exhaustion prerequisites to adjudicating a claim of illegal state detention.

The court previously found that Mr. Kelner described no conditions at the county jail that he alleged were unconstitutional. He was advised that in order to establish a constitutional violation, he was required to allege that a condition was applied to punish him, and that it was not reasonably related to a legitimate governmental objective. See Merryfield v. Jordan, 584 F.3d 923, 925-26 (10th Cir. 2009)(affirming district court's decision to dismiss SVP's complaint because "none of the privations of which he complained involved a fundamental right, and he alleged no facts indicating that any restrictions are not rationally related to a legitimate governmental objective or are irrational or arbitrary"). He makes no attempt in his Response to discuss any particular condition at the jail, and thus fails to cure this deficiency in his complaint. Moreover, plaintiff does not allege facts indicating that his detention at the county jail caused him "injury in fact, economic or otherwise." See Memphis Community School Dist. v. Stachura, 477 U.S. 299, 307 (1986)("[T]he

basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights.")(citing Carey v. Piphus, 435 U.S. 247, 254 (1978)). Nor has he suggested any malicious acts by defendants that might entitle him to punitive damages. It follows that Mr. Kelner has stated no claim for money damages or declaratory relief based upon conditions of his confinement at the jail.

Insofar as Kelner's allegations may be intended as a challenge to his civil commitment, they must have been presented in the first instance at his commitment proceedings and on direct appeal in the courts of the State.

For all the foregoing reasons, the court concludes that the complaint must be dismissed for failure to present a federal constitutional claim for the requested relief that is cognizable under either 42 U.S.C. § 1983 or 28 U.S.C. § 2241.

**IT IS THEREFORE ORDERED** that plaintiff's Motions for Leave to Proceed in forma pauperis (Docs. 2, 7) are incomplete, but are granted for the sole purpose of dismissing this action.

**IT IS FURTHER ORDERED** that this action is dismissed, without prejudice, for failure to state sufficient facts to support a cognizable federal constitutional claim.

**IT IS SO ORDERED.**

Dated this 25th day of April, 2011, at Topeka, Kansas.

                <u>s/Sam A. Crow</u>
                U. S. Senior District Judge